| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| JOHN R. DURSO, JOSEPH FONTANO, and WILLIAM F. CLARKE, as Trustees and Fiduciaries of the LOCAL 305 CIO'S PENSION FUND, | **MEMORANDUM & ORDER** |
| Plaintiffs, | 23-CV-7136 (ERK) (AYS) |
| – against – | |
| TIRRENIO, INC., d/b/a SCARAMELLA'S RISTORANTE, a/k/a SCARAMELLA'S RESTAURANT, | |
| Defendant. | |

KORMAN, *J.*:

John R. Durso, Joseph Fontano, and William F. Clarke (collectively, "Plaintiffs"), as trustees and fiduciaries of the Local 305 CIO's Pension Fund (the "Fund"), brought suit against Tirrenio, Inc., d/b/a Scaramella's Ristorante, a/k/a Scaramella's Restaurant ("Defendant"), on September 26, 2023, alleging that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980. Before the Court is Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons set forth below, Plaintiffs' motion is granted.

1

## I. Background

### a. Factual Background

According to the Complaint, the Fund is an employee benefit plan within the meaning of ERISA Section 3(3), 29 U.S.C. § 1002(3). Compl. ¶ 4, ECF No. 1. It was established pursuant to the terms of various collective bargaining agreements ("CBAs") between Local 338, RWDSU/UFCW (and its predecessor, Local 305, RWDSU/UFCW), a labor organization representing employees in an industry affecting commerce, on one hand, and employers that are required to make contributions to the Fund on behalf of their employees covered by the CBAs, on the other hand. *Id.* ¶ 5. The Fund provides various pension benefits to covered employees, retirees, and their dependents, and it is operated pursuant to the terms of a Trust Agreement. *Id.* ¶¶ 6–7; ECF No. 14. Plaintiffs are the "plan sponsor" within the meaning of ERISA Section 3(16)(B)(iii), 29 U.S.C. § 1002(16)(B)(iii), and are fiduciaries of the Fund, as defined by ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). Compl. ¶¶ 9–10.

Defendant, a New York corporation, was a party to and bound by a series of CBAs with Local 338, RWDSU/UFCW (or its predecessor, Local 305, RWDSU/UCFW). *Id.* ¶¶ 11, 13; ECF No. 13. Pursuant to these CBAs, Defendant was obligated to pay—and did pay—contributions to the Fund on behalf of employees covered by the agreements. Compl. ¶ 14. The Fund's records indicate that Defendant either permanently ceased to have an obligation to contribute to the

2

Fund or permanently ceased all covered operations during the plan year ending December 31, 2021, effectuating a "complete withdrawal" from the Fund within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a). *Id.* ¶¶ 15–16. Under ERISA Section 4201, 29 U.S.C. § 1381, Defendant is obligated to pay withdrawal liability to the Fund for its proportionate share of the Fund's unfunded vested benefits. *Id.* ¶ 17. In accordance with ERISA Section 4211, 29 U.S.C. § 1391, the Fund calculated the present value of Defendant's withdrawal liability to be $121,355.00. *Id.* ¶ 18, Ex. A.

On November 30, 2022, the Fund sent Defendant a written demand for payment of its withdrawal liability, including a payment schedule, according to which Defendant was obligated to pay eighty quarterly payments of $2,646.75, with the first payment due on or before January 1, 2023. *Id.* ¶ 19, Ex. B. Defendant did not contest the finding that it had withdrawn from the Fund or challenge the Fund's withdrawal liability assessment, and it failed to make the initial quarterly payment by January 1, 2023. *Id.* ¶¶ 20–21. On June 22, 2023, the Fund notified Defendant of its failure to make its withdrawal liability payments and informed Defendant that it had sixty days to cure its default and make its withdrawal liability payments. *Id.* ¶ 23, Ex. C. Defendant did not cure its failure to make quarterly withdrawal liability payments, thereby defaulting on its withdrawal liability obligations to the Fund under ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A). *Id.* ¶¶ 24–25. The entire outstanding balance of Defendant's withdrawal liability therefore became due

and owing pursuant to ERISA Section 515 and 4219(c)(5), 29 U.S.C. §§ 1145, 1399(c)(5). *Id.* ¶ 26. To date, Defendant has not cured its default or paid its withdrawal liability. *Id.* ¶ 22; *see also* Mathurin Dec. ¶¶ 13–14, ECF No. 9-3.

### b. Procedural History

Plaintiffs commenced this action against Defendant on September 26, 2023 by filing a Complaint. *See generally* Compl. Plaintiffs properly served Defendant with the summons and Complaint through the New York Secretary of State on October 11, 2023. *See* ECF No. 5; Fed. R. Civ. P. 4(h)(1)(B); N.Y. Bus. Corp. L. § 306(b)(1)(i). Defendant's deadline to respond to the Complaint was November 1, 2023. *See* ECF No. 5. After Defendant failed to answer the Complaint, Plaintiffs requested a certificate of default, *see* ECF No. 7, which was entered by the Clerk of Court on January 30, 2024, *see* ECF No. 8. On December 2, 2024, Plaintiffs moved for default judgment, *see* Pls.' Mot. Default J., ECF No. 9; on January 22, 2025, they served the motion for default judgment and supporting documents on Defendant's last known business address, *see* ECF No. 11. Plaintiffs seek judgment against Defendants in the amount of $148,142.70, comprised of $121,355.00 in withdrawal liability, $24,271.00 in liquidated damages, $2,047.50 in attorneys' fees, and $469.20 in costs. *See* Pls.' Br. 7–8, ECF No. 9-1.

## II. Discussion

### a. Entry of Default Judgment

Motions for default judgment are governed by Federal Rule of Civil Procedure 55, which provides for a two-step process for the entry of judgment against a party who fails to defend. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011). First, the moving party must obtain the clerk's entry of default by noting the defaulting party's failure to respond or appear. *See* Fed. R. Civ. P. 55(a). Here, the Clerk of Court entered a default against Defendant on January 30, 2024. ECF No. 8. Second, the moving party must apply to the court for the entry of default judgment. *See* Fed. R. Civ. P. 55(b); *see also Priestley*, 647 F.3d at 504–05. In determining whether a default judgment should be entered, courts principally consider: (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Demopoulos v. Showtime on the Piers, LLC*, No. 22-CV-5584, 2024 WL 4044008, at *4 (E.D.N.Y. Aug. 13, 2024), *report and recommendation adopted*, 2024 WL 4043690 (E.D.N.Y. Sept. 4, 2024).

A consideration of these factors in the instant case counsels in favor of entering a default judgment against Defendant. As to the first factor, Defendant's continued failure to appear in this matter for over a year and its failure to respond to the Complaint and the instant motion sufficiently demonstrate willfulness. *See SEC*

5

*v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) (finding defendant's non-appearance and failure to respond equated to willful conduct); *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 7-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment). With respect to the second factor, without an answer to the Complaint, "the Court cannot determine whether [D]efendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214, 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *report and recommendation adopted*, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). Finally, as to the third factor, Plaintiffs will be prejudiced if the motion for default judgment is denied because they have "no alternative legal redress" to recover the withdrawal liability, liquidated damages, and attorneys' fees and costs sought. *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). Based on the foregoing considerations, entry of default judgment is warranted.

    **b. Liability**

Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). A court

deciding a motion for default judgment "must determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim for which relief can be granted." *Showtime on the Piers*, 2024 WL 4044008, at *5 (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).

Under ERISA Section 4201, 29 U.S.C. § 1381, if an employer who is required to contribute to a multiemployer plan withdraws from that plan, the employer becomes subject to withdrawal liability to the fund for the proportionate share of the fund's unfunded vested benefits. *See Trs. of Gen. Bldg. Laborers' Loc. 66 Pension Fund v. J.M.R. Concrete Corp.*, No. 19-CV-1214, 2023 WL 6385803, at *1 (E.D.N.Y. Sept. 29, 2023). An employer completely withdraws from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan, or (2) permanently ceas[ing] all covered operations under the plan." 29 U.S.C. § 1383(a).

To recover for withdrawal liability from an employer, a plan's sponsor must determine the amount of liability, notify the employer of said amount, include with the notice a schedule for payment, and demand payment in accordance with the included schedule. *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988); *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. §§ 1382, 1399). Upon receipt of the withdrawal liability notice, an employer is required to make payments according to the plan's schedule within sixty days. *See* 29 U.S.C. § 1399(c)(2). If

7

payment is due and the employer fails to make payment, the plan's sponsor may submit a second notice to the employer. If the employer, within sixty days, still fails to make payment, the employer is in default, and the plan sponsor may require immediate payment of the outstanding amount of the employer's withdrawal liability, plus accrued interest. *Id.* § 1399(5)(A).

Disputes over withdrawal liability determinations are to be resolved by arbitration. An employer may, within ninety days of receiving the withdrawal liability notice, request review of the withdrawal determination by the plan sponsor. *See id.* § 1399(b)(2)(A). Either party may thereafter initiate an arbitration proceeding to address any unresolved disputes regarding the plan sponsor's determination of liability. *See id.* § 1401(a)(1). If no arbitration hearing is initiated within the statutorily mandated timeframe, then the plan sponsor's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. *Id.* § 1401(b)(1). "[N]o documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration." *Trs. of Loc. 813 Pension Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 23-CV-08493, 2024 WL 4250355, at *3 (E.D.N.Y. Aug. 5, 2024), *report and recommendation adopted*, Sept. 23, 2024 ECF Order.

In the instant case, the Fund is a "multiemployer plan" within the meaning of ERISA Section 3(3) and (37), 29 U.S.C. § 1002(3), (37), and Defendant was obligated to pay contributions to the Fund pursuant to the terms of the CBAs agreed

8

to by Defendant and Local 338 RWDSU/UFCW (and its predecessor, Local 305, RWDSU/UFCW). Compl. ¶¶ 4–5, 14; Treiman Dec. ¶ 5, ECF No. 9-2. Plaintiffs allege that "Defendant either permanently ceased to have an obligation to contribute to the Fund or permanently ceased all covered operations during the plan year ending December 31, 2023," constituting a "complete withdrawal" from the Fund. Compl. ¶¶ 15–16. The Fund notified Defendant on November 30, 2022 that it had effectuated a complete withdrawal from the Fund and that Defendant's withdrawal liability was calculated to be $121,355.00. *Id.* ¶¶ 18–19, Ex. B. The Fund also provided a payment schedule, according to which Defendant was obligated to pay eighty quarterly payments of $2,646.75, and demanded that the first payment be made on or before January 1, 2023. *Id.* ¶ 19, Ex. B. According to Plaintiffs, Defendant has not made any payment, initiated arbitration, or challenged the Fund's determination of Defendant's withdrawal liability. *Id.* ¶¶ 20–22; *see also* Mathurin Dec. ¶¶ 12–14. These allegations, as set forth in the Complaint, are sufficient to establish Defendant's liability under ERISA Section 4219, 29 U.S.C § 1399.

### c. Damages

Once liability is established, the court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014). Plaintiffs seek to recover $121,355.00 in withdrawal liability, $24,271.00 in liquidated damages, $2,047.50 in attorneys' fees, and $469.20 in costs. *See* Pls.' Br. 7–8.

9

### i. Withdrawal Liability

"To establish a claim for unpaid withdrawal liability, a plaintiff must show only that it complied with statutory procedural requirements." *Trs. of Loc. 1034 Pension Tr. Fund v. Superior Limousine Serv., Inc.*, No. 22-CV-5684, 2024 WL 4664668, at *4 (E.D.N.Y. Aug. 18, 2024) (internal quotation marks and citation omitted), *report and recommendation adopted*, Sept. 23, 2024 ECF Order. To satisfy the procedural requirements, the plaintiff must: "(1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." *Id.* (quoting *Div. 1181 Amalgamated Transit Unions v. D&A Bus Co., Inc.*, 270 F. Supp. 3d 593, 608–09 (E.D.N.Y. 2017)). If, after receiving notice and demand of payment, the employer fails to initiate arbitration, then the employer waives any right to contest the amount of withdrawal liability it owes, and the district court will not make an independent determination as to the reasonableness of the withdrawal liability calculations. *See Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); *Trs. of Loc. 813 Ins. Tr. Fund v. Freedom Demolition, Inc.*, No. 13-CV-2701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) ("By failing to initiate an arbitration proceeding . . . defendant waived its right to contest the amount of withdrawal

10

liability calculated by plaintiffs, and that amount thus became due pursuant to 29 U.S.C. § 1401(b)(1).").

Here, the Fund determined that Defendant had completely withdrawn from the Fund and calculated the value of Defendant's withdrawal liability, in accordance with ERISA Section 4211, 29 U.S.C. § 1391, to be $121,355.00. Compl. ¶¶ 15, 18, Ex. A. The Fund sent Defendant a letter on November 30, 2022, informing Defendant that it had effectuated a complete withdrawal from the Fund, that the allocated share was $121,355.00, and that Plaintiffs demanded payment. *Id.* ¶ 19, Ex. B. Because Defendant did not contest the finding that it had withdrawn from the Fund or challenge the Fund's withdrawal liability assessment, Defendant waived its right to contest the amount of withdrawal liability. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). Accordingly, Plaintiffs are awarded $121,355.00 in withdrawal liability.

### ii. Liquidated Damages

Plaintiffs also request liquidated damages in the amount of $24,271.00, equal to twenty percent of the withdrawal liability of $121,355.00. Pursuant to ERISA Section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), an employer who fails to comply with its obligations to pay withdrawal liability becomes liable for liquidated damages in an amount equal to the greater of the interest due on the withdrawal liability or up to twenty percent of the withdrawal liability as provided in the

11

collective bargaining and trust agreements.[1]  Here, the Trust Agreement allows for liquidated damages in "an amount equal to either (a) the legal rate of interest . . . or (b) liquidated damages in the amount of 20% of the contributions due." ECF No. 14 § 4.1(a).  Accordingly, Plaintiffs are awarded liquidated damages in the amount of $24,271.00, equaling twenty percent of Defendant's withdrawal liability.  *See, e.g.*, *Deianni v. New Media Printing*, No. 11-CV-5267, 2012 WL 3842596, at *6 (E.D.N.Y. Aug. 17, 2012), *report and recommendation adopted*, 2012 WL 3839618 (E.D.N.Y. Sept. 5, 2012).

### iii. Attorneys' Fees

Plaintiffs also request $2,047.50 in attorneys' fees.  Pursuant to ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), plaintiffs are typically entitled to payment of their reasonable attorneys' fees and costs incurred in a successful action to obtain withdrawal liability.  *See* 29 U.S.C. § 1132(g)(2)(D).  District courts "enjoy[] broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).  When considering applications for attorneys' fees, courts typically apply the lodestar method, "under which a reasonable hourly rate is multiplied by a reasonable number of hours

---

[1] In addition to liquidated damages, ERISA provides that a plaintiff in a successful action to obtain withdrawal liability is entitled to a separate award of interest on the outstanding withdrawal liability.  29 U.S.C. § 1132(g)(2)(B).  Plaintiffs, however, do not seek interest on the outstanding withdrawal liability in the instant motion. *See* Pls.' Br. 7.

12

expended." *Century 21 Real Est. LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009). The lodestar method "creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).

Plaintiffs were previously represented in this action by attorney Daniel Treiman of the firm Freidman & Anspach, which is "engaged primarily in the representation of labor unions and employee benefit plans."[2] Treiman Dec. ¶ 12. Treiman, an associate, is a 2017 graduate of New York University School of Law and has been practicing labor and employee benefits law since 2019. *Id.* ¶ 13. Plaintiffs seek an hourly rate of $360.00 for the work Treiman completed in 2023 and an hourly rate of $450.00 for the work he completed in 2024. *Id.* ¶¶ 11–12. Overall, Treiman billed 5.00 hours of work on this matter, and he has provided contemporaneous billing records that reflect the time spent working and tasks completed. *Id.*, Ex. DD.

Treiman's requested hourly rates are reasonable. Treiman's requested rate of $360 per hour for the work he completed in 2023 is consistent with fees awarded to associates in ERISA matters in this district. *See, e.g.*, *Gesualdi v. Scara-Mix*, No. 14-CV-0765, 2017 WL 5564673, at *9 (E.D.N.Y. Nov. 17, 2017) (awarding

---

[2] On March 4, 2025, Jade L. Morrison of the firm Colleran, O'Hara & Mills L.L.P. substituted as counsel for Plaintiffs in place of Treiman. ECF No. 12. Morrison does not seek attorneys' fees in the instant motion.

13

associates attorneys' fees ranging from $275 to $375 in ERISA case for work performed in 2013 through 2017).  Although Treiman's requested rate of $450 per hour for work completed in 2024 is slightly higher than fees typically awarded to associates in this district, a magistrate judge in this district recently recommended awarding Treiman fees at this rate in a similar ERISA default judgment matter, noting that "[c]ourts in this district hold a broad range of fees to be reasonable" and that attorneys' fees "need not be 'frozen in time' as to require the same rate to apply over a period of several years."  *Durso v. Andover Subacute and Rehab.*, No. 23-CV-6773, 2025 WL 959078, at *2 (E.D.N.Y. Feb. 25, 2025) (collecting cases). Additionally, because the work in this case was "entirely handled by [an] associate[] rather than higher billing partners," a higher rate than usual is appropriate.[3]  *See Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, and Lab. Mgmt. Coop. Funds v. Dame Contracting, Inc.*, No. 23-CV-5254, 2024 WL 2293831, at *7 (E.D.N.Y. May 21, 2023).  Moreover, Treiman's declaration indicates that the fees were "agreed upon by the firm and the client," Treiman Dec. ¶ 12, which supports the conclusion that the rates are reasonable, *see Demopoulos v. Rollin Dairy Corp.*, No. 21-CV-7923, 2023 WL 2908663, at *6 (S.D.N.Y. Feb. 7, 2023) (noting that because the fees were "agreed upon by the firm and the client,"

---

[3] Although Treiman's billing records reflect that he consulted about the instant matter with another attorney at Freiman & Anspach with the initials "JH," Plaintiffs only seek reimbursement for the time billed by Treiman.  *See* Treiman Dec., Ex. DD.

14

the court's reduction in the rate sought was "more minimal than might be done otherwise"), *report and recommendation adopted as modified*, 2023 WL 2327188 (S.D.N.Y. Mar. 2, 2023).

The total number of hours billed—5.00 hours—is also reasonable for this case. *See, e.g.*, *Loc. 1992 Pension Fund v. All Serv. Equip. Corp.*, No. 22-CV-02522, 2023 WL 11868244, at *6 (E.D.N.Y. July 28, 2023) (finding 10.30 hours reasonable in the ERISA default judgment context), *report and recommendation adopted*, Aug. 18, 2023 ECF Order. Treiman's billing records, which were provided with the motion for default judgment, *see* Treiman Dec., Ex. DD, indicate that the work performed was necessary to the litigation and do not suggest that he engaged in duplicative, excessive, or unnecessary work. Plaintiffs are therefore awarded $2,047.50 in attorneys' fees.

### iv. Costs

Finally, Plaintiffs request $469.20 in costs, consisting of $402 for the filing fee and $67.20 in fees and costs for service of process. *Id.* ¶ 15. Plaintiffs have submitted an invoice with their motion for default judgment to substantiate the requested figure. *Id.*, Ex. EE. Under ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), plaintiffs who prevail on enforcement actions are entitled to recover reasonable costs. *See* 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are recoverable as a matter of course. *See, e.g.*, *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d. 277, 290–91 (E.D.N.Y. 2010) (awarding costs for filing fees,

15

service, postage, and photocopying). Accordingly, Plaintiffs are awarded $469.20 in costs.

### III.  Conclusion

Plaintiffs' motion for default judgment is granted. Plaintiffs are awarded $148,142.70 in damages, consisting of: (1) $121,355.00 in withdrawal liability; (2) $24,271.00 in liquidated damages; (3) $2,047.50 in attorneys' fees; and (4) $469.20 in costs. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Brooklyn, New York  
July 29, 2025

*Edward R. Korman*  
Edward R. Korman  
United States District Judge